### UNITED STATES of America, Plaintiff–Appellee,

v.

### Isaac SAN JUAN–CRUZ, Defendant–Appellant.

No. 02–50138.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 2002.

Filed Dec. 23, 2002.

385

Siri Shetty, Federal Defenders of San
Diego, Inc., San Diego, CA, for the defen-
dant-appellant.

Orlando Gutierrez, Assistant United States Attorney, San Diego, CA, for the plaintiff-appellee.

Before D.W. NELSON and T.G. NELSON, Circuit Judges, and SCHWARZER,* District Judge.

## OPINION

D.W. NELSON, Senior Circuit Judge.

Isaac San Juan–Cruz appeals his jury conviction for being found in the United States following deportation in violation of 8 U.S.C. § 1326. San Juan, a Mexican national, was apprehended and questioned by federal officers after being discovered in the United States near the Mexican border. Prior to trial, San Juan moved to suppress the statements he made to the Government because they were obtained in violation of the Fifth Amendment. The district court denied San Juan's motion and admitted the statements at trial. San Juan appeals on the grounds that the district court erred in admitting the statements he made to the Government after being apprehended; failing to dismiss the indictment when his underlying deportation was invalid; and denying his motion for arrest of judgment because the indictment failed to allege an essential element of the offense. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part and reverse in part.

## BACKGROUND

San Juan was apprehended in Imperial County, California, by Border Patrol on August 4, 2001, while attempting to reenter the United States illegally after being deported by INS. Border Patrol discovered San Juan in an irrigation ditch, approximately a quarter-mile into U.S. territory from the Mexican border. San Juan was deported from the United States following removal hearings before an Immigration Judge on September 3, 1999.[1]

After being found in Imperial County, San Juan was taken into custody by Border Patrol and transported to the Calexico Border Patrol Station. San Juan was initially advised by Border Patrol of his Administrative Rights pursuant to 8 C.F.R. § 287.3. Specifically, Agent Clark of Border Patrol informed San Juan that he had the right to have counsel present during questioning but not at the Government's expense. He also was advised that any statements he made could be used against him for purposes of administrative removal.

Soon thereafter, San Juan was warned that he also could be charged criminally and was read the following *Miranda* rights by Agent Clark from a pre-printed card:

> Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court or in any immigration proceeding. You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning. If you can't afford a lawyer,

---

* The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

1. San Juan is a Mexican national with no valid U.S. visa. While his eight-year-old son, Isaac, is a U.S. citizen, no immigrant petition was filed on San Juan's behalf at the time he appeared before the Immigration Judge. Furthermore, we note that even if Isaac had filed such a petition, the petition would have been invalid because Isaac was not yet twenty-one-years old.

one will be appointed for you before any questioning, if you wish. If you decide to answer questions now without a lawyer present, you still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

After being read the above rights, San Juan informed Agent Clark that he was a Mexican national; entered the United States last on August 4, 2001; was born in Mexico on May 6, 1973; was previously deported from the United States; left the United States voluntarily after being ordered removed by INS; and did not apply for permission to re-enter the United States prior to re-crossing the border on August 3, 2001.

After being indicted, San Juan moved to suppress the statements he made to Agent Clark at the Border Patrol Station. San Juan argued that the statements were obtained by the Government in violation of his Fifth Amendment rights and that the *Miranda* warning provided to him was confusing. The district court denied the motion and the statements were admitted at trial. On November 28, 2001, the jury returned a verdict in favor of the Government.

San Juan was sentenced to seventy-seven months imprisonment, three years supervised release, and a $100 special assessment.

## DISCUSSION

### A. *Standard of Review*

 The adequacy of a *Miranda* warning is a question of law that is reviewed de novo. *U.S. v. Connell,* 869 F.2d 1349, 1351 (9th Cir.1989). "De novo review is appropriate because the adequacy of *Miranda* warnings involves application of a legal standard to a set of facts, which 'require[s] the consideration of legal con-cepts and involves the exercise of judgment about the values underlying legal principles.'" *Id.* (quoting *United States v. Doe,* 819 F.2d 206, 210 n. 1 (9th Cir.1985) (B.Fletcher, J., concurring); *United States v. McConney,* 728 F.2d 1195, 1202 (9th Cir.1984) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984)). The denial of a motion to dismiss an indictment for a violation of 8 U.S.C. § 1326 for due process defects in an underlying deportation proceeding is reviewed de novo. *United States v. Muro–Inclan,* 249 F.3d 1180, 1182 (9th Cir.2001). The validity of an indictment is reviewed de novo. *United States v. Rosi,* 27 F.3d 409, 414 (9th Cir.1994).

### B. *Adequacy of Warnings*

 Individuals possess the right to be informed, prior to custodial interrogation, "that [they have] the right to the presence of an attorney, and that if [they] cannot afford an attorney one will be appointed for [them] prior to any questioning if [they] so desire [ ]." *Miranda v. Arizona,* 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). "What *Miranda* requires 'is meaningful advice to the unlettered and unlearned in language which [they] can comprehend and on which [they] can knowingly act.'" *Connell,* 869 F.2d at 1351 (quoting *Coyote v. U.S.,* 380 F.2d 305, 308 (10th Cir.1967)). In order for the warning to be valid, the combination or the wording of its warnings cannot be affirmatively misleading. *Connell,* 869 F.2d at 1352. The warning must be clear and not susceptible to equivocation.

 San Juan contends that the two different and conflicting sets of warnings read to him by Agent Clark were confusing. After being taken into custody by the Government at the Border Patrol Station, San Juan was first read his Administrative Rights. Pursuant to 8 C.F.R. § 287.3, he

was informed that he had the right to have an attorney present during questioning but "not at the [G]overnment's expense." In other words, he was told that if he wished to have the assistance of an attorney, the Government would not pay for his attorney's fees. Agent Clark then advised San Juan of his *Miranda* rights. Under *Miranda*, he was advised that if he could not afford an attorney, one would be appointed for him. While being interrogated by the Government, San Juan was detained and handcuffed to a chair. San Juan argues that these two sets of conflicting instructions were read to him one after another and, as a result, their meaning became unclear. We agree.

When one is told clearly that he or she does not have the right to a lawyer free of cost and then subsequently advised, "[i]f you can't afford a lawyer, one will be appointed for you," it is confusing. Requiring someone to sort out such confusion is an unfair burden to impose on an individual already placed in a position that is inherently stressful. *See Miranda*, 384 U.S. at 436, 86 S.Ct. 1602 ("the very fact of custodial interrogation exacts a heavy toll on individual liberty and trades on the weakness of individuals."); 457 (recognizing that an atmosphere of custodial interrogation "carries its own badge of intimidation. To be sure, this is not physical intimidation, but it is equally destructive of human dignity."); *Dickerson v. United States*, 530 U.S. 428, 435, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) ("custodial police interrogation, by its very nature, isolates and pressures the individual . . .").

The totality of the circumstances in this case compels us to find that the warnings given to San Juan were indeed confusing. From San Juan's perspective, it was entirely unclear what the nature of his rights was under the Fifth Amendment. Specifically, San Juan could not reasonably ascer-

tain from the warnings provided to him by the Government whether he could or could not retain the services of an attorney for free.

In order to be valid, a *Miranda* warning must convey *clearly* to the arrested party that he or she possesses the right to have an attorney present prior to and during questioning. *See Connell*, 869 F.2d at 1353. The warning also must make clear that if the arrested party would like to retain an attorney but cannot afford one, the Government is obligated to appoint an attorney for free. *Id.* Chief Justice Warren in *Miranda* explained that:

> In order fully to apprise a person interrogated of the extent of his rights under this system then, it is necessary to warn him not only that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed to represent him. Without this additional warning, the admonition of the right to consult with counsel would often be understood as meaning only that he can consult with a lawyer if he has one or has the funds to obtain one. The warning of a right to counsel would be hollow if not couched in terms that would convey to the indigent—the person most often subjected to interrogation—the knowledge that he too has a right to have counsel present.

384 U.S. at 473, 86 S.Ct. 1602. Here, the Government fell short of this standard.

Requiring the Government to advise individuals of their *Miranda* rights is more than a mere procedural nicety or legal technicality. *Miranda*, 384 U.S. at 476, 86 S.Ct. 1602 ("The requirement of warnings and waiver of rights is . . . fundamental with respect to the Fifth Amendment privilege and not simply a preliminary ritual to existing methods of investigation."). Over the years, this process has evolved into an important constitutional norm upon which

our system of criminal procedure and due process jurisprudence has invested its faith and reliance. *Dickerson,* 530 U.S. at 443, 120 S.Ct. 2326 (*"Miranda* has become embedded in routine police practice to the point where the warnings have become part of our national culture."). The *Miranda* warning is intended to ensure that all persons taken into custody are first made aware of their rights before being interrogated by the Government. It is imperative that this procedure is taken seriously. The Government cannot and should not presume that individuals are already aware of what rights they possess prior to being questioned.

Regardless of circumstance, the *Miranda* warning must be read and conveyed to all persons clearly and in a manner that is unambiguous. A confession that is made by an individual involuntarily or absent the knowledge that he or she possesses the right to have an attorney present prior to and during questioning is unreliable and may not be admitted at trial. *Miranda,* 384 U.S. at 444, 86 S.Ct. 1602; *Dickerson,* 530 U.S. at 432–33, 120 S.Ct. 2326 (citing *King v. Warickshall,* 1 Leach 262, 263–64 (K.B.1783) ("A free and voluntary confession is deserving of the highest credit ... but a confession forced from the mind by flattery of hope, or by the torture of fear, comes in so questionable a shape ... that no credit ought to be given to it; and therefore it is rejected")).

██ Although Agent Clark could have rectified the situation easily by clarifying his statements or advising San Juan to disregard the Administrative Rights in favor of those that were read to him under *Miranda,* Agent Clark did neither. Instead, Agent Clark proceeded to question San Juan about his immigration status and intent. When a warning, not consistent with *Miranda,* is given prior to, after, or simultaneously with a *Miranda* warning,

the risk of confusion is substantial, such that the onus is on the Government to clarify to the arrested party the nature of his or her rights under the Fifth Amendment. The Government should not presume after having read two sets of contradictory warnings to an individual that he or she possesses sufficient legal or constitutional expertise to understand what are his or her rights under the Constitution. *See Miranda,* 384 U.S. at 472, 86 S.Ct. 1602 ("No amount of circumstantial evidence that the person may have been aware of this right will suffice .... Only through such a warning is there ascertainable assurance that the accused was aware of this right.").

Although there is some discrepancy in the record as to how much time elapsed between when Agent Clark advised San Juan of his Administrative Rights and when he read San Juan his *Miranda* rights, this issue is not dispositive. At trial, Agent Clark testified while being cross-examined by San Juan's public defender, that he advised San Juan of his *Miranda* rights "right after" he was informed of his Administrative Rights. On direct examination, however, Agent Clark testified that "[i]t would have been some time after" he read San Juan his Administrative Rights that he also advised San Juan of his *Miranda* rights. It is not clear from the record which version of the facts is true or how much time did in fact elapse between the two events. In light of the circumstances of this case, however, we do not need to resolve this dispute in order to address the issues raised by San Juan in this appeal. More important than the timing of the Government's warnings is whether the substance, content, and clarity of the warnings conveyed to San Juan his rights under *Miranda.* In this case, they clearly did not.

## C. *Harmless Error*

■ Although the Government does not argue "harmless error" on appeal, we are still obligated to undertake a "harmless error" analysis upon finding a *Miranda* violation. *Ghent v. Woodford*, 279 F.3d 1121, 1126 (9th Cir.2002). The Government's case at trial was based largely upon statements made by San Juan to Agent Clark. In fact, every element of the charged offense was based at least in part on statements improperly obtained from San Juan. This is highlighted in the Government's closing argument at trial. Specifically, the Government relied on San Juan's statements to establish the following elements: (1) San Juan is a Mexican citizen; (2) he was "knowingly in the United States;" (3) he intended to return to the United States when he was apprehended by Border Patrol; and (4) he did not have permission to re-enter the United States.

Without San Juan's admissions, the Government's burden at trial would have been substantially more difficult to meet. Aside from San Juan's admissions, the evidence presented by the Government at trial as to San Juan's citizenship, his intent and mens rea, and whether he applied for permission to re-enter the United States before crossing the border was largely circumstantial. Therefore, in light of the Government's heavy reliance placed upon San Juan's admissions in meeting its evidentiary burden at trial, we are not convinced that a jury would have still convicted him absent the admission of San Juan's improperly obtained statements.

Accordingly, the district court's denial of San Juan's motion to suppress is reversed.

## D. *The Indictment*

■ San Juan's contention that the district court erred in failing to dismiss San Juan's indictment lacks merit. In 1999, no immigrant visa was immediately available to him. Although the Immigration Judge did not follow the proper procedure, San Juan suffered no prejudice because he was ineligible to adjust his immigration status at the time of the hearing. 8 U.S.C. § 1255.

■ San Juan's claim that the Government failed to allege an essential element of the offense in the indictment also fails. Voluntary entry need not be expressly pled in an indictment for a violation of 8 U.S.C. § 1326. *U.S. v. Parga–Rosas*, 238 F.3d 1209, 1213 (9th Cir.2001).

## CONCLUSION

For all the aforementioned reasons, the district court's denial of San Juan's motion to dismiss the indictment is **AFFIRMED**; the district court's denial of San Juan's motion to arrest judgment is **AFFIRMED**; the district court's denial of San Juan's motion to suppress is **REVERSED**; and we **REMAND** for a new trial.