

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JAN 08 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 17-50424 |
| Plaintiff-Appellee, | D.C. No. 3:17-cr-00208-H-1 |
| v. | |
| BEATRIZ MARVIN RAMIREZ-CARRILLO, AKA Ramirez-Carrillo, AKA Marvin Beatriz Ramirez-Carrillo, | MEMORANDUM[*] |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 17-50426 |
| Plaintiff-Appellee, | D.C. No. 3:15-cr-01464-H-1 |
| v. | |
| BEATRIZ MARVIN RAMIREZ-CARRILLO, AKA Ramirez-Carrillo, AKA Marvin Beatriz Ramirez-Carrillo, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Southern District of California

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Marilyn L. Huff, District Judge, Presiding

Argued and Submitted December 7, 2018
Pasadena, California

Before: RAWLINSON and BEA, Circuit Judges, and SETTLE,[**] District Judge.

After arresting Appellant Beatriz Ramirez-Carrillo ("Ramirez"), border patrol agents first told her that she was facing proceedings for her removal to her native Mexico, and that she was entitled to the services of an attorney, but at no cost to the Government. Then, her situation changed. The border patrol agents told her that she was to be charged with the crime of transporting an illegal alien into this country, and read her the *Miranda* rights, including that she could avail herself of the services of an attorney, at Government expense.

The issue before us: in view of what the agents first told Ramirez with respect to her rights in removal proceedings, did the agents' *Miranda* warnings sufficiently explain the effect the change of her situation had as to who would pay for the attorney's services?

1. Whether a *Miranda* warning was adequate is a legal question we review de novo. *United States v. Connell*, 869 F.2d 1349, 1351 (9th Cir. 1989). Relevant here, *Miranda v. Arizona* requires law enforcement officers to inform a person in

---

[**] The Honorable Benjamin H. Settle, United States District Judge for the Western District of Washington, sitting by designation.

custody that she has "the right to the presence of an attorney, and that if [she] cannot afford an attorney one will be appointed for [her] prior to any questioning if [she] so desires." 384 U.S. 436, 479 (1966). This warning "must be clear and not susceptible to equivocation." *United States v. San Juan-Cruz*, 314 F.3d 384, 387 (9th Cir. 2002).

When conflicting sets of rights are given, it does not matter that the *Miranda* warnings were correct if the agents did not clarify to the suspect which set of warnings applied. *United States v. Botello-Rosales*, 728 F.3d 865, 867 (9th Cir. 2013) (citing *San Juan-Cruz*, 314 F.3d at 388-89). "The Government should not presume after having read two sets of contradictory warnings to an individual that he or she possesses sufficient legal or constitutional expertise to understand what are his or her rights under the Constitution." *San Juan-Cruz*, 314 F.3d at 389. Indeed, "[w]hen a warning, not consistent with *Miranda*, is given prior to, after, or simultaneously with a *Miranda* warning, the risk of confusion is substantial, such that the onus is on the Government to clarify to the arrested party the nature of his or her rights under the Fifth Amendment." *Id.* The Government may rectify the situation by clarifying the agent's statements or advising the suspect to "disregard the Administrative Rights in favor of those that were read to [her] under *Miranda*." *Id.*

Here, border patrol agents did neither. Agent Rodriguez advised Ramirez of two sets of rights that conflicted on the issue whether the attorney's services were to be paid by the Government. Although Agent Rodriguez attempted to tell Ramirez that her administrative rights no longer applied after the Government confirmed it would prosecute her for transporting an illegal alien, his attempts were unsuccessful.[1]

---

[1]The following excerpt is the Government's English translation of Agent Rodriguez's Spanish conversation with Ramirez:

> **AGENT RODRIGUEZ:** At the start [of this] you were given an advisement of rights in which you ask to return to your country as soon as possible. Those rights apply only in immigration procedures for deporting you- to deport you from the United States. Now that there's a ch- now, there's a change in your case, and you're not going to be able to go back to your country now. And that instead of returning to your country, you're going to be prosecuted for federal crimes, you should understand that the administrative rights no longer belong [sic]. From now on only the criminal rights that follow will apply to your case. Do you understand this warning?
>
> **RAMIREZ:** No.
>
> **AGENT RODRIGUEZ:** Yes. Just the a-administrative notices they gave you [sic], right? Or for administrative proceeding [sic] – they no longer apply because, well, criminal charges will be brought against you for smuggling undocumented [aliens].
>
> **RAMIREZ:** . . . So, why? I mean, I didn't know th- th- those people[.]
>
> **AGENT RODRIGUEZ:** Okay. Look, in a second- we'll able [sic] –
> 
> (continued...)

4

you'll have the right and I'm going to explain this right to you. . . . We'll be able to talk a little more about what- what happened, and if you want, but for now this- this notice is to notify you that any administrative, uhm, procedure . . . no longer, no longer, uh, you're now considered and now criminal charges are going to be filed on you, this will be a criminal procedure. Do you understand this notification?

**RAMIREZ:** I understand, officer, but . . . [Crying]

**AGENT RODRIGUEZ:** When you got here they did up some simple documents, [UI] just a- a paragraph for you to choose whether you wanted to return to Mexico as soon as possible or with this case in- or against a judge [sic], Ok? That was just the- an other [sic] form and they already explained it, so that's to say that we won't be doing the procedures [sic] . . . that way and we're going to talk about another way we'll be doing your case [sic]. . . . But do you understand what was just explained to you?

**RAMIREZ:** Well, more or less what the officer told me just now, I don't know what's going on. I'm in shock.

**AGENT RODRIGUEZ:** . . . Right now I need for you to pay a little bit of attention to me. . . . Calm down a little bit, Ok? And pay attention in [sic] what I'm reading to you and what I'm explaining to you and then at that time we can proceed and I'll explain to you more about your rights, Okay? Because there are several rights that you- that you belong to [sic] Okay? . . . I cannot- cannot proceed un- until you-you explain to me [sic] if you've understand me- if you understand your rights, okay?

**RAMIREZ:** Yes, officer.

**AGENT RODRIGUEZ:** As we're explaining, all we're saying here is that any administrative procedure that you were going to seek, that will no longer-it-it you'll no longer be granted that. At this time, I'm telling

(continued...)

5

At best, Agent Rodriguez made it clear to Ramirez that she could no longer return to Mexico because she was about to be prosecuted in the United States. But he never clarified that this change in proceedings accompanied a change in her right to consult an attorney free of charge, nor did he make it clear that she should

---

[1](...continued)
you, because of the fact that we arrested you for contraband of undocumented [persons], so now we're going to proceed with a criminal procedure. Charges are being brought against you- criminal charges. Okay?

**RAMIREZ:** Yes.

**AGENT RODRIGUEZ:** So this is just notifying you that any procedure that you requested, administrative, will no longer be granted to you. We're going to proceed then with criminal charges. Understand?

**RAMIREZ:** Well, yes . . .

Agent Rodriguez then read Ramirez her *Miranda* rights from a pre-printed form in Spanish, which Ramirez subsequently signed.

disregard her administrative rights in favor of her *Miranda* rights.[2] Thus,

Ramirez's *Miranda* warnings were inadequate, and the district court erred in

denying her motion to suppress her subsequent statements.

2. We review statements admitted in violation of *Miranda* for harmless error.

*United States v. Butler*, 249 F.3d 1094, 1098 (9th Cir. 2001). "[B]efore a federal

constitutional error can be held harmless, the court must be able to declare a belief

that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S.

18, 24 (1967). This court has "held erroneous admission of inculpatory statements

harmless under the *Chapman* standard only where the [statements] did not go to

the heart of the case." *United States v. Williams*, 435 F.3d 1148, 1163 (9th Cir.

2006).

---

[2]Although Agent Rodriguez told Ramirez that she faced criminal charges and read her the *Miranda* rights, he never advised her that she should *disregard* her administrative right to consult an attorney at her own expense in favor of her *Miranda* right to consult an attorney free of charge. The closest he got to this was when he told Ramirez: "[Y]ou should understand that the administrative rights no longer belong [sic]. From now on only the criminal rights that follow will apply to your case. Do you understand this warning?" Ramirez responded, "No." Merely mentioning the bureaucratic phrase "administrative right" does not give context to that term, and that should have been obvious to the agent from Ramirez's answer to his question whether she understood his "warning." Because the burden is on the Government "to clarify to the arrested party the nature of his or her rights under the Fifth Amendment," *San Juan-Cruz*, 314 F.3d at 389, Agent Rodriguez's further unsuccessful attempts to clarify his initial statement to Ramirez were insufficient.

Here, "the heart of the case" was whether Ramirez knowingly helped smuggle Marisol Santiago into the United States. Ramirez's defense was premised on her being in the wrong place at the wrong time. She argued that she merely stopped at Border Field State Park to use the restroom on her way home and Santiago jumped into her vehicle without her knowledge. At trial, the Government used Ramirez's post-*Miranda* statements "to show inconsistencies in her claim" that she had stopped at the park for innocent reasons and "that her claimed visit to a nearby church was 'suspect.'" It also "challenged her story about looking for potential clients for her tamales business," and "characterized her account of that morning's travels as 'incoherent.'" These statements went to the heart of Ramirez's defense because the Government implied that Ramirez's story lacked credibility and she was aware that Santiago jumped into her car.

Further, the material difference between Ramirez's first and second trials was the Government's use of her post-*Miranda* statements. The first trial resulted in a hung jury while the second trial resulted in Ramirez's conviction. This is additional evidence that the district court's error was not harmless beyond a reasonable doubt. *See United States v. Schuler*, 813 F.2d 978, 982 (9th Cir. 1987) ("[P]articularly in view of the prior hung jury, we conclude that the error was not harmless beyond a reasonable doubt."). Therefore, we reverse Ramirez's

8

conviction and remand to the district court for proceedings consistent with this disposition.

**REVERSED and REMANDED.**

*United States v. Ramirez-Carrillo*, **Case Nos. 17-50424 and 17-504**⁄6
**Settle, District Judge, concurring:**

I concur in the disposition. I write separately only to express my opinion that the record also reflects that Ramirez likely did not understand her rights because she demonstrated confusion, she was crying during the officer's attempted explanation, and she stated that she was "in shock." I believe these facts further support the conclusion that the border patrol agent failed to adequately clarify Ramirez's rights.



***United States v. Ramirez-Carrillo*, Case Nos. 17-50424 and 17-50426**
**Rawlinson, Circuit Judge, dissenting:**

I respectfully dissent.  As I read *United States v. San Juan-Cruz*, 314 F.3d

384, 389 (9th Cir. 2002), the *Miranda*[1] violation occurred in that case because the

border patrol agent failed to "rectify" the situation arising when an undocumented

person is first advised of rights that apply in the civil administrative context, but is

later determined to be subject to criminal prosecution.  *Id*; *see also id.* at 386.  The

panel explained that the border patrol agent could have "rectified the situation

easily by clarifying his statements *or* advising San Juan to disregard the

Administrative Rights in favor of those that were read to him under *Miranda*."  *Id.*

at 389 (emphasis added).   The majority opinion addresses only the "clarifying"

direction in *San Juan*.  *See Majority Opinion*, p.2 (framing the issue as whether

"the agents' *Miranda* warnings sufficiently explain the effect the change of her

situation had as to who would pay for the attorney's services").  This framing of

the issue makes no mention of the other basis upon which the agent could have

"easily rectified" the situation:  advising the petitioner "to disregard the

Administrative Rights in favor of those that were read to [her] under *Miranda*."

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

1

*San Juan*, 314 F.3d at 389.

Once it was determined that the petitioner's situation had changed, in that she was to be charged with transporting an illegal alien into the country, border patrol agents advised the petitioner that the Administrative Rights no longer applied, and that she now faced criminal charges governed by the *Miranda* warning that was given. The record is irrefutable that she understood the change, because once she realized that she now faced criminal charges, she began to weep. The *Miranda* warning included an advisement that the petitioner could avail herself of the services of an attorney at Government expense. Because this advisement satisfied the "advising" direction of *San Juan*, *see* 314 F.3d at 389, I would affirm the judgment of the district court.