[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10986
Non-Argument Calendar

_____

D.C. Docket No. 1:16-cr-20575-RNS-5

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

YINA MARIA CASTANEDA BENAVIDEZ,
a.k.a La Reina,
a.k.a. Ingeniera,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 21, 2021)

Before LAGOA, BRASHER, and BLACK, Circuit Judges.

PER CURIAM:

Yina Castaneda Benavidez (Castaneda) appeals her conviction and 270-month, below-guidelines sentence for conspiring to distribute five or more kilograms of cocaine knowing or having reasonable cause to believe it would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a) and 963. Castaneda, who was convicted after a jury trial, argues: (1) the district court erred in denying her motion for judgment of acquittal, filed under Federal Rule of Criminal Procedure 29; and (2) her sentence was substantively unreasonable. After review, we affirm Castaneda's conviction and sentence.

## I.  DISCUSSION

### A.  Denial of Motion for Judgment of Acquittal

Castaneda first argues it was error for the district court to deny her Rule 29 motion for judgment of acquittal, which she renewed at the close of all the evidence. She contends the government failed to prove she knew or had reasonable cause to believe the cocaine at issue—which departed from Tumaco, Colombia and traveled via go-fast boat to Central America—was destined for unlawful importation into the United States.

We review the denial of a motion for judgment of acquittal on sufficiency of the evidence grounds de novo, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in the government's favor. *United States v. Browne*, 505 F.3d 1229, 1253 (11th Cir.

2

2007).  We will affirm the verdict if a reasonable jury could conclude the evidence establishes the defendant's guilt beyond a reasonable doubt.  *Id.*  "This inquiry does not require that the evidence be inconsistent with every reasonable hypothesis except guilt."  *Id.* (quotation marks omitted).  Instead, "the jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial," and "our sufficiency review requires only that a guilty verdict be reasonable, not inevitable" based on that evidence.  *Id.* (quotation marks omitted).

The test for the sufficiency of the evidence is the same whether the evidence is direct or circumstantial, and we make no distinction between the weight given to direct or circumstantial evidence.  *United States v. Mieres-Borges*, 919 F.2d 652, 657 (11th Cir. 1990).  However, "[w]hen the government relies on circumstantial evidence, reasonable inferences, not mere speculation, must support the conviction."  *United States v. Mendez*, 528 F.3d 811, 814 (11th Cir. 2008).

The district court did not err in denying Castaneda's motion for judgment of acquittal.  At trial, the government was required to prove Castaneda conspired to distribute cocaine "knowing, or having reasonable cause to believe" it would be "unlawfully imported into the United States or into waters within a distance of 12

miles of the coast of the United States." 21 U.S.C. §§ 959(a), 963.[1]  Although the

government did not present direct evidence of Castaneda's knowledge, it presented

sufficient circumstantial evidence from which a reasonable jury could conclude

Castaneda knew or had reasonable cause to believe the cocaine would be

unlawfully imported into the United States.  *See United States v. Bollinger*, 796

F.2d 1394, 1405 (11th Cir. 1986) (knowledge cocaine was to be imported in

violation of 21 U.S.C. § 952 could be proven through circumstantial evidence),

*modified on other grounds on denial of reh'g*, 837 F.2d 436 (11th Cir. 1988).

First, the testimony of Castaneda's codefendants suggests she knew or had

reasonable cause to believe the cocaine would be unlawfully imported into the

United States.  The indictment charged Castaneda and ten codefendants with the

same conspiracy.  Four of those codefendants, who pleaded guilty to the

conspiracy, testified that they: (1) worked with Castaneda to smuggle loads of

cocaine weighing hundreds of kilograms each from Colombia to Central America,

and (2) knew the cocaine would be imported into the United States.

---

[1] Section 959(a) makes it unlawful to manufacture or distribute a controlled substance "intending, knowing, or having reasonable cause to believe [it] will be unlawfully imported into the United States or into waters within a distance of 12 miles of the coast of the United States." 21 U.S.C. § 959(a).  Though Castaneda's July 28, 2016, indictment refers to 21 U.S.C. § 959(a)(2), which prohibited any person from manufacturing or distributing a controlled subsection "knowing" it would be unlawfully imported into the United States, that subsection was eliminated when the statute was amended on May 16, 2016, before the conspiracy ended. *See* Transnational Drug Trafficking Act of 2015; Pub. L. 114-154, § 2, 130 Stat. 387 (2016). The jury was instructed to apply the revised statutory language if it found Castaneda's participation in the conspiracy continued after the amendment.

Julio Belalcazar Estacio (Belalcazar) testified the drug trafficking organization he and Castaneda were involved in aimed to send cocaine from Colombia to Central America, "with the final destination being [the] United States." He further stated his contacts in Central America told him the cocaine was going to be sent to the United States and it was no secret the cocaine was going there. Jefferson Sevillano Quinones testified he knew the cocaine would ultimately be sold in the United States because one of his bosses in the drug trafficking organization—Eider Bonilla Moran (Bonilla)—had told him so, and most people in the organization knew the cocaine's final destination was the United States. Ariel Angulo Lasso similarly testified the cocaine's final destination was the United States, and it was no secret the cocaine was going to the United States, where it was "more expensive." Ceneiber Quinones Jurado likewise testified he knew the cocaine was going to the United States "because it's obvious" and because that was "where the drugs cost the most." He also testified everyone in the drug trafficking organization knew the cocaine was going to the United States.

That Castaneda's codefendants all knew the cocaine was bound for the United States suggests that Castaneda herself would have also known this information. Significantly, the latter three codefendants testified Castaneda ranked higher in the drug trafficking organization than they did, further indicating she

5

would have known at least as much as they did about where the cocaine was headed.

Second, Castaneda's intercepted communications referenced U.S. law enforcement agencies and U.S. currency. Specifically, Castaneda expressed concern about the United States Drug Enforcement Administration and told Belalcazar when the "gringos," meaning the United States Coast Guard, were patrolling the waters in which the cocaine was being transported. Castaneda also discussed the price of cocaine in U.S. dollars and did not mention any currency other than the U.S. dollar or the Colombian peso. Though these communications do not directly state the cocaine was destined for the United States, they further suggest Castaneda knew or had reasonable cause to believe it was going there.

Third, the government presented other testimony indicating the cocaine was bound for the United States. The government's international drug trafficking expert testified the quantity of cocaine involved in the shipments indicated it was "highly likely" the cocaine would be sent to a large and profitable consumer market, which existed in the Untied States but not Central America, and that the cocaine could sell for far more money in the United States than in Central America or Mexico. The government's expert further testified that Central America was a critical transshipment zone where cocaine from Colombia was prepared for further shipment on to the United States, and that transporting the cocaine to Central

America enabled Colombian drug traffickers to avoid cartel violence in Mexico.  A Colombian National Police Officer who investigated Castaneda and the drug trafficking organization similarly testified that cocaine is typically smuggled from Tumaco to Central America and then to the United States, and that it was unlikely the cocaine was being sent elsewhere.  This testimony regarding the likely market for and typical route of the cocaine to the United States via Central America further suggests Castaneda had reason to know the cocaine would be unlawfully imported into the United States.

Castaneda argues the government offered only speculation about her knowledge of where the cocaine was headed.  She also contends the fact she may have been paid in U.S. dollars is not evidence the cocaine was going to the United States and points out her expert testified there are large consumer markets for cocaine outside the United States, such as in Europe.  She also asserts cooperating witnesses are not credible because they hope to receive favorable treatment from the government.  These arguments are unavailing, however, as we draw all reasonable inferences and credibility choices in the government's favor, and the jury was "free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial."  *See Browne*, 505 F.3d at 1253 (quotation marks omitted).  Taken together, the codefendants' testimony, intercepted communications, and other testimony concerning the market for and route of the

7

cocaine provide substantial evidence from which a reasonable jury could conclude Castaneda knew or had reasonable cause to believe the cocaine would be unlawfully imported into the United States.

## B. *Substantive Reasonableness*

Castaneda next contends her sentence was substantively unreasonable under the 18 U.S.C. § 3553(a) factors. She argues that she was significantly less culpable than others involved in the large-scale distribution of cocaine, notes her poor and abusive upbringing in Colombia and separation from her children in Colombia, and contends a ten-year sentence would have been sufficient to provide just punishment and fulfill other sentencing goals. Castaneda also argues there was unwarranted disparity between her sentence and those of her codefendants.[2]

We consider the substantive reasonableness of a sentence under the abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). On substantive reasonableness review, we may vacate the sentence only if we "are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (quotation marks

---

[2] To the extent Castaneda challenges the conditions of her confinement for the first time in her reply brief, we deem any such argument to be waived. *See United States v. Levy*, 379 F.3d 1241, 1244 (11th Cir. 2004).

omitted).  The party who challenges the sentence bears the burden to show that the sentence is unreasonable, considering the record and the § 3553(a) factors.  *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).

Section 3553(a) requires the district court to "impose a sentence sufficient, but not greater than necessary," to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, protect the public, and provide the defendant with necessary training, care, or treatment.  18 U.S.C. § 3553(a)(2)(A)-(D).  The court must also consider the nature and circumstances of the offense and history and characteristics of the defendant, the types of sentences available, the applicable guidelines range, any pertinent policy statement issued by the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims.  *Id.* § 3553(a)(1), (3)-(7).  The weight given to any § 3553(a) factor is a matter committed to the discretion of the district court.  *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008).

Based on a total offense level of 41 and criminal history category of I, Castaneda's advisory guidelines range was 324 to 405 months' imprisonment.  The district court varied downward from the low end of the guidelines range by 54 months, resulting in a below-guidelines sentence of 270 months' imprisonment.

The statutory range for Castaneda's offense was 120 months to life imprisonment. *See* 21 U.S.C. § 960(b)(1)(B)(ii).

Castaneda's sentence is substantively reasonable. At sentencing, after hearing the parties' arguments, the district court emphasized that this was a serious case involving hundreds of kilograms of cocaine, with over 600 kilograms attributed to Castaneda. The court also stated Castaneda had played a significant role in the offense, which was supported by evidence at trial that she brought others into the drug trafficking organization, managed and supervised others within the organization, and arranged logistics for shipping the cocaine. The court also indicated it was important to deter others from committing similar offenses. These considerations are consistent with § 3553(a) factors including the nature and circumstances of the offense and the need for the sentence imposed to reflect the seriousness of the offense and afford adequate deterrence. 18 U.S.C. § 3553(a)(1), (2)(A)-(B). It was in the court's discretion to assign greater weight to these factors than to Castaneda's upbringing or distance from her family. *See Williams*, 526 F.3d at 1322.

Castaneda's sentence did not result in unwarranted sentencing disparity. Nine of Castaneda's ten codefendants pleaded guilty before the district court; one was transferred to another judicial district. Only Castaneda proceeded to trial. Castaneda argues Edison Perlaza Orobio (Orobio), the leader of the drug

10

trafficking organization, had a lower advisory guidelines range even though 30,000 kilograms of cocaine were attributed to him in the presentence investigation report. She also contends several other defendants—Belalcazar, Bonilla, and Jefferson Bravo Espinosa (Bravo)—received lower sentences than she did despite being held accountable for larger quantities of cocaine.

Castaneda's arguments are without merit.  Orobio had yet to be sentenced at the time of Castaneda's sentencing.  Belalcazar, Bonilla, and Bravo all pleaded guilty, cooperated with the government, and accepted responsibility.  As such, none of those individuals could serve as proper points of comparison for whether there was any unwarranted sentencing disparity.  *See United States v. Cavallo*, 790 F.3d 1202, 1237 (11th Cir. 2015) (stating that under § 3553(a)(6), "a defendant who cooperates with the Government and pleads guilty is not similarly situated to his co-defendant who proceeds to trial," and "there is no unwarranted disparity even when a cooperating defendant receives a substantially shorter sentence than a defendant who goes to trial" (quotation marks omitted)).  In any event, the district court considered the sentences of Castaneda's codefendants in deciding to vary downward by 54 months.

As a final matter, that Castaneda's sentence fell below the advisory guidelines range and well below the statutory maximum of life imprisonment are further indications of its reasonableness.  *See United States v. Nagel*, 835 F.3d

11

1371, 1377 (11th Cir. 2016) (concluding sentence's position at the low end of the advisory guidelines range and significantly below the statutory maximum of life supported its reasonableness).

## II.  CONCLUSION

For the reasons above, we affirm Castaneda's conviction and sentence.

**AFFIRMED.**