**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JAVIER GARCIA-VILLEGAS,
*Defendant-Appellant.*

No. 08-50503

D.C. No.
3:08-cr-01761-JM-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Jeffrey T. Miller, District Judge, Presiding

Argued and Submitted
May 6, 2009—Pasadena, California

Filed August 4, 2009

Before: John T. Noonan, Diarmuid F. O'Scannlain and
Susan P. Graber, Circuit Judges.

Opinion by Judge Noonan;
Concurrence by Judge Graber

10225

## COUNSEL

James M. Chavez, San Diego, California, for the appellant.

George V. Manahan, San Diego, California, for the appellee.

## OPINION

NOONAN, Circuit Judge:

Javier Garcia-Villegas (Garcia) appeals the judgment of the district court convicting him of the misdemeanor of attempting to enter the United States in violation of 8 U.S.C. § 1325. We affirm the conviction and hold that Garcia's admission of alienage was sufficiently corroborated by the testimony of witnesses who observed Garcia climbing over the border fences from Mexico.

### FACTS

On May 21, 2008, Sgt. Gomer, a video surveillance operator working for the California Army National Guard, observed two individuals climbing down the north side of the primary border fence between Mexico and the United States. He notified Border Patrol Agent Andrew Kim of the activity. The two individuals moved towards the secondary fence, and one of them hooked a ladder onto the top of the fence and steadied the ladder. The second individual climbed the ladder,

negotiated the concertina wire, and dropped to the north side of the secondary fence. He hid behind a bush near the fence. Within minutes, Agent Kim apprehended him. The man who'd helped him, probably a coyote, had already returned to Mexico.

Agent Kim asked the suspect his name, his parents' names, his place of birth, and whether he had documents permitting him to be in the United States. The suspect identified himself as Javier Garcia-Villegas, a Mexican national without authorization to be in this country.

At the station, Border Patrol Agent Villarreal entered Garcia's biographical information into a database, took his fingerprints, and informed him of his administrative rights. A little later, Agent Villarreal told Garcia the proceedings against him had changed, because he was going to be tried for committing a federal crime. He then advised Garcia of his Miranda rights in Spanish. Garcia waived these rights and agreed to speak to Agent Villarreal.

Under oath, Garcia declared that he was born in Mexico; that he had entered the United States as a child approximately 20 years ago; that he had left the United States for the first time recently; that he had reentered the United States illegally by climbing the border fences; that this was his first entry into the United States since entering the country as a child; and that he entered the United States with the intention of going to Pomona, California, where he once resided.

## PROCEEDINGS

On June 11, 2008, a bench trial was held before Anthony J. Battaglia, Magistrate Judge. The magistrate judge found against Garcia. The district court affirmed the judgment.

Garcia appeals.

ANALYSIS

**[1]** Admissions, postfactum, of the elements of the crime with which the defendant is charged must be corroborated by "substantial independent evidence which would tend to establish the trustworthiness of the statement[s]." *Opper v. United States*, 348 U.S. 84, 93. So, with prudence, the law requires more evidence of the corpus delicti than the extrajudicial admission of the person charged with its commission.

**[2]** In our case, Garcia twice admitted the elements of an illegal entry by an alien into this country. The government supplemented these admissions with the testimony of one witness who saw Garcia climbing the fences marking the border, and one who apprehended him, with torn clothes and bloody hands, hiding in a bush on the American side. Garcia's admissions were corroborated. His guilt was proved.

**[3]** It is suggested that Garcia could have had some motive in his fence-climbing that was not based on a desire to avoid deportation as an alien. No doubt such a motive may be imagined. The imagined motive is not relevant. A reasonable factfinder could infer from the fact that Garcia climbed two fences and hid in one bush that Garcia was conscious that he had no legal right to enter the United States. This substantial and independent evidence is sufficient to establish the trustworthiness of Garcia's statements. *See Opper*, 348 U.S. at 93. Corroboration enough!

**[4]** Garcia points to *United States v. Hernandez*, 105 F.3d 1330 (9th Cir. 1996). In that case the government proved the defendant's illegal entry into the United States by documents showing his previous deportation to Mexico; by testimony as to the defendant scaling the border fence; and by his repeated admissions. We affirmed the judgment of conviction, finding that the government's evidence, taken as a whole, sufficiently corroborated the defendant's admissions of alienage. We explicitly declined to hold that any individual piece of evi-

dence presented by the government, including the mode of entry evidence, was by itself sufficient to corroborate the defendant's admissions. That was not the case before us then. It is the case before us now. Here, the mode of entry evidence comes not only from the defendant but also from two independent sources. That is sufficient to provide the corroboration. We do not decide today whether a mere admission of border crossing would suffice to confirm an admission of alienage.

**[5]** Garcia's objections to the *Miranda* advice he received in Spanish from the agents are unpersuasive: a quibble as to the translation; and an attempt to apply *United States v. San Juan-Cruz*, 314 F.3d 384 (9th Cir. 2002), where in fact that court endorsed the procedure that Agent Villarreal followed here. *See id*. at 389. Garcia also argues for the first time that the agents employed "a two-step" process of interrogation to avoid *Miranda* contrary to *Missouri v. Seibert*, 542 U.S. 600, 617 (2004). Garcia's argument is supported by no facts and had already been waived by not being argued before. The admissions made by Garcia before he was Mirandarized were, the district court found, voluntary.

**[6]** Finally, we reject Garcia's claim that the government failed to identify him as the perpetrator of the offense. The government witnesses sufficiently identified Garcia as the man on the fences and in the bush.

The judgment of the district court is AFFIRMED.

---

GRABER, J., concurring in part and specially concurring in part:

I concur in most of the majority opinion and concur in the judgment. But I respectfully disagree with the majority's description of our holding in *United States v. Hernandez*, 105

F.3d 1330 (9th Cir. 1997). There, we held that mode-of-entry evidence was insufficient to corroborate a defendant's admission that he was an alien. *Id.* at 1333. We are bound by the holdings of *Hernandez. See generally Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) (en banc). We recognize an exception to that rule when a holding is "made casually and without analysis, . . . uttered in passing without due consideration of the alternatives, or where it is merely a prelude to another legal issue that commands the panel's full attention." *V.S. ex rel. A.O. v. Los Gatos-Saratoga Joint Union High Sch. Dist.*, 484 F.3d 1230, 1232 n.1 (9th Cir. 2007) (internal quotation marks omitted). That exception does not apply here: The *Hernandez* panel expressly considered whether mode-of-entry evidence was sufficient, held that it was not, and explained its reasoning. 105 F.3d at 1333.

I nevertheless reach the same conclusion as the majority, because I read the *Hernandez* holding as encompassing only mode-of-entry evidence *admitted by the defendant*. In *Hernandez*, the only evidence presented concerning the defendant's mode of entry was the defendant's own admission. *See id.* at 1331 (noting that "Hernandez told [the government agent] that he had entered the United States by scaling the border fence with Mexico"). In other words, in *Hernandez* the mode-of-entry evidence was not independent corroboration; instead, it was just part of the defendant's admission. Here, by contrast, the government introduced testimony from two witnesses, one who saw Defendant scale the fences and another who found Defendant hiding in the bushes with torn clothes and bloody hands. That distinction is significant because the purposes of the corroboration rule are to avoid prosecutions based on insufficient investigation and to avoid creating incentives for abusive tactics in eliciting admissions. *See Escobedo v. Illinois*, 378 U.S. 478, 488-89 (1964).