**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. RICARDO RIZO-RIZO, *Defendant-Appellant.* | No. 20-50172 D.C. Nos. 3:20-mj-20210-BMK-H-1 3:20-mj-20210-BMK-H OPINION |

Appeal from the United States District Court
for the Southern District of California
Marilyn L. Huff, District Judge, Presiding

Argued and Submitted August 3, 2021
Pasadena, California

Filed October 29, 2021

Before: Richard A. Paez, Consuelo M. Callahan, and
Mark J. Bennett, Circuit Judges.

Opinion by Judge Bennett

## SUMMARY[*]

### Criminal

Affirming a conviction for attempted illegal entry in violation of 8 U.S.C. § 1325(a)(1), the panel held that § 1325(a) is a regulatory offense such that the presumption in favor of scienter does not apply, and thus knowledge of alienage is not an element.

### COUNSEL

Doug Keller (argued) and Michael Marks, Federal Defenders of San Diego Inc., San Diego, California, for Defendant-Appellant.

David Chu (argued), Assistant United States Attorney; Daniel E. Zipp, Chief, Appellate Section, Criminal Division; Robert S. Brewer, Jr., United States Attorney; United States Attorney's Office, San Diego, California; for Plaintiff-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

BENNETT, Circuit Judge:

Defendant Ricardo Rizo-Rizo claims knowledge of alienage is an element of the crime of attempted illegal entry in violation of 8 U.S.C. § 1325(a)(1). The magistrate judge rejected Rizo-Rizo's contention that knowledge of alienage was such an element and so did not recite it as an element during Rizo-Rizo's plea colloquy. Rizo-Rizo nonetheless entered a guilty plea and then appealed to the district court, which also rejected his contention. We have jurisdiction pursuant to 28 U.S.C. § 1291 to consider Rizo-Rizo's appeal of those decisions. We hold that 8 U.S.C. § 1325(a) is a regulatory offense, and thus knowledge of alienage is not an element.

I.

A border patrol agent found and stopped Rizo-Rizo near the United States/Mexico border. When questioned, Rizo-Rizo admitted that he was a citizen of Mexico without appropriate immigration documents to be legally present in the United States. As a result, the agent arrested him. Rizo-Rizo was then questioned again, waived his Miranda rights, and confirmed that he was a citizen of Mexico who had just "illegally entered the United States . . . ."

Rizo-Rizo was charged with the misdemeanor of attempted illegal entry, in violation of 8 U.S.C. § 1325(a)(1), and he chose to plead guilty without a plea agreement. During the plea colloquy, the magistrate judge listed these elements of attempted illegal entry:

> First, the Defendant was at the time of Defendant's attempted entry into the United

States an alien, that is, a person who is not a natural born or naturalized citizen or a national of the United States.

Second, the Defendant had the specific intent to enter the United States at a time and place other than as designated by immigration officers.

Third, the Defendant also had the specific intent to enter the United States free from official restraint, meaning the Defendant intended to enter without being detected, apprehended, or taken into custody by government authorities so that he or she could roam freely in the United States.

And, fourth, the Defendant did something that was a substantial step toward committing the crime and that strongly corroborated the Defendant's intent to commit the crime.

Defense counsel objected, claiming that "the Defendant ha[d] to know he was an alien" and thus that the magistrate judge had improperly omitted an element of the offense. The magistrate judge overruled the objection, and Rizo-Rizo pled guilty and was sentenced to time served. On appeal, the district court affirmed, holding that knowledge of alienage was not an element of 8 U.S.C. § 1325(a)(1).

II.

We review de novo the adequacy of a plea colloquy. *United States v. Minore*, 292 F.3d 1109, 1115 (9th Cir. 2002). Whether knowledge of alienage is an element of

8 U.S.C. § 1325(a)(1) is an issue of first impression in the Ninth Circuit.

## III.

We begin, of course, with the statutory text. "In determining what mental state is required to prove a violation of the statute, we look to its words and the intent of Congress." *United States v. Price*, 980 F.3d 1211, 1218 (9th Cir. 2019) (quoting *I.R. ex rel. E.N. v. L.A. Unified Sch. Dist.*, 805 F.3d 1164, 1167 (9th Cir. 2015)). Section 1325(a)(1) provides that "[a]ny alien who . . . enters or attempts to enter the United States at any time or place other than as designated by immigration officers" will be fined, or imprisoned up to six months, or both, for a first offense. 8 U.S.C. § 1325(a)(1).

While subsection (a)(1) contains no express mens rea requirement, that subsection's attempt offense incorporates the common law requirement of specific intent to commit the offense. *Cf. United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1196 (9th Cir. 2000) (en banc) (explaining that attempted illegal reentry is a specific intent crime under common law principles of attempt). But *that* specific intent element does not require the government to prove knowledge of alienage. The alienage element precedes the phrase "enters or attempts to enter": "Any alien who . . . enters or attempts to enter the United States . . . ." 8 U.S.C. § 1325(a)(1). So the specific intent goes to the entry, not the status of the person entering. The specific intent of the attempt offense in § 1325 is simply that the person specifically intended to enter the United States at a time or

place other than as designated by immigration officers, as correctly recited by the magistrate judge.[1]

Rizo-Rizo argues that our decisions in *Gracidas-Ulibarry*, 231 F.3d 1188, and *United States v. Smith-Baltiher*, 424 F.3d 913 (9th Cir. 2005), foreclose this interpretation. In *Smith-Baltiher*, we held that a defendant charged with attempted illegal reentry, 8 U.S.C. § 1326(a), was entitled to present evidence that he thought he was a United States citizen. 424 F.3d at 925. Section 1326(a) penalizes "any alien who [having been deported] enters, attempts to enter, or is at anytime found in, the United States, *unless . . . the Attorney General has expressly consented . . . [or] he was not required to obtain such advance consent*." 8 U.S.C. § 1326(a) (emphasis added). The attempt offense in § 1326(a) requires that "the defendant had the purpose, i.e.[,] conscious desire, to reenter the United States without the express consent of the Attorney General." *Smith-Baltiher*, 424 F.3d at 923 (quoting *Gracidas-Ulibarry*, 231 F.3d at 1196). Thus, a defendant's knowledge of his citizenship status can be relevant to whether the defendant believed he needed the Attorney General's permission before attempting reentry. *Id.* at 925. By contrast, the attempt offense in § 1325(a)(1) contains no similar provision for which the defendant's knowledge of his citizenship status would matter. And, in *Smith-Baltiher*, we did not hold that

---

[1] We have recognized that, "for the purposes of § 1326, 'enter' has a narrower meaning than its colloquial usage." *United States v. Lombera-Valdovinos*, 429 F.3d 927, 928 (9th Cir. 2005). "An alien has not entered the United States under § 1326 unless he does so 'free from official restraint.'" *Id.* (quoting *Gracidas-Ulibarry*, 231 F.3d at 1191 n.3). Thus, the attempt offense in § 1325(a)(1) also requires that the person specifically intended to enter without being taken into custody by government authorities, as the magistrate judge correctly recited as an element.

knowledge of alienage is an element of § 1326(a)'s attempt offense. Instead, we decided only that knowledge of alienage was a possible defense that negates the required intent (*that the defendant intended to enter the United States without consent*). *Id.* at 925. *Smith-Baltiher* does not support Rizo-Rizo.

Rizo-Rizo also argues that a knowledge of alienage requirement follows from *Rehaif v. United States*, 139 S. Ct. 2191 (2019), in which the Supreme Court decided that a defendant must know of his status as an "alien . . . illegally or unlawfully in the United States" to be convicted of firearm possession under 18 U.S.C. § 922(g). *Id.* at 2195. But *Rehaif* concerned an *express* mens rea requirement. "A separate provision, § 924(a)(2), adds that anyone who '*knowingly* violates' [§ 922(g)] shall be fined or imprisoned for up to 10 years." *Id.* at 2194. Thus, the question in *Rehaif* "concern[ed] the scope of the word 'knowingly,'" and the Court determined that it "applie[d] both to the defendant's conduct and to the defendant's status." *Id.* There is no such express mens rea requirement in § 1325(a)(1) that would apply to the defendant's status. Thus, *Rehaif* does not support Rizo-Rizo's reading of § 1325(a)(1). *See United States v. Collazo*, 984 F.3d 1308, 1324 (9th Cir. 2021) (en banc) (explaining that "[w]here a statute includes a mens rea requirement," courts are "not faced with the question whether Congress intended to dispense with a mens rea requirement entirely" but must only determine how far a "knowingly" modifier extends into the statute).

Though § 1325(a) is silent on knowledge of alienage, that is not the end of the analysis. Silence itself "does not necessarily suggest that Congress intended to dispense with a conventional *mens rea* element." *Staples v. United States*, 511 U.S. 600, 605 (1994); *see Rehaif*, 139 S. Ct. at 2195.

Rather, we usually construe statutes "in light of the background rules of the common law, in which the requirement of some *mens rea* for a crime is firmly embedded." *Staples*, 511 U.S. at 605 (citation omitted).[2] This "presumption" in favor of scienter, however, does not apply when Congress creates certain regulatory or public welfare offenses, which "impose a form of strict criminal liability through statutes that do not require the defendant to know the facts that make his conduct illegal." *Id.* at 606; *see also Morissette v. United States*, 342 U.S. 246, 256 (1952). In construing such regulatory offenses, "we have inferred from silence that Congress did not intend to require proof of *mens rea* to establish an offense." *Staples*, 511 U.S. at 606.

So we must decide whether § 1325(a) is a regulatory offense as to which the presumption in favor of scienter does not apply. We look at "the peculiar nature and quality of the offense," *Morissette*, 342 U.S. at 259, as well as "the expectations that individuals may legitimately have in dealing with the regulated [activity]," *Staples*, 511 U.S.

---

[2] According to *Morissette v. United States*, 342 U.S. 246, 262 (1952):

> Congressional silence as to mental elements in an Act merely adopting into federal statutory law a concept of crime already so well defined in common law and statutory interpretation by the states may warrant quite contrary inferences than the same silence in creating an offense new to general law, for whose definition the courts have no guidance except the Act.

There is no indication that illegal entry by a noncitizen was a common law crime. *Cf. Pena-Cabanillas v. United States*, 394 F.2d 785, 788 (9th Cir. 1968) (finding 8 U.S.C. § 1326, which criminalizes illegal reentry, was "not based on any common law crime"), *abrogated on other grounds by Gracidas-Ulibarry*, 231 F.3d 1188.

at 619. For example, hand grenades are so dangerous that "one would hardly be surprised to learn that possession of hand grenades is not an innocent act," and so the presumption does not apply. *United States v. Freed*, 401 U.S. 601, 609 (1971); *see also United States v. Balint*, 258 U.S. 250, 252–54 (1922) (upholding strict liability for statute prohibiting the sale of certain narcotics). But the Supreme Court did apply the presumption to a statute prohibiting unauthorized possession of food stamps, because unauthorized possession (as defined by the statute) covered a broad range of innocent conduct. *Liparota v. United States*, 471 U.S. 419, 426 (1985).

We know that § 1325(a) was enacted to control unlawful immigration. *See United States v. Corrales-Vazquez*, 931 F.3d 944, 947 (9th Cir. 2019); H.R. Rep. No. 70-2418, at 7–8 (1929). This is a normal regulatory function of the sovereign. And § 1325(a)(1) prohibits conduct that individuals would legitimately expect to be unlawful. "[C]rossing international borders is a type of conduct generally subject to stringent public regulation," *United States v. Martinez-Morel*, 118 F.3d 710, 716 (10th Cir. 1997) (cleaned up), and entering the country outside of designated ports of entry is a surreptitious type of international border crossing, *see* H.R. Rep. No. 70-2418, at 3 (describing entry outside of a port of entry as "surreptitious or unlawful entry"). Thus, this is *not* a case in which interpreting the statute as a regulatory offense would sweep in "a broad range of apparently innocent conduct." *Liparota*, 471 U.S. at 426.

We also consider the penalties that attach to a violation. In *Staples*, the Supreme Court explained that a statute's potentially harsh penalty of up to ten years' imprisonment conflicts with the concept of a regulatory offense, which originally "involved statutes that provided for only light

penalties such as fines or short jail sentences." 511 U.S. at 616. Thus, "a severe penalty is a further factor tending to suggest that Congress did not intend to eliminate a *mens rea* requirement." *Id.* at 618. The penalty for violating § 1325(a) is a fine or imprisonment of up to six months for the first offense, or both. 8 U.S.C. § 1325(a). While the penalty increases to no more than two years for a subsequent offense, *id.*, an offender should be on notice that a *repeat* entry would be unlawful. Thus, the penalties associated with violating § 1325(a) at least lean toward Congress intending the statute to be a regulatory offense.

And, importantly, we do not write on a blank slate. In *Pena-Cabanillas v. United States*, 394 F.2d 785 (9th Cir. 1968), *abrogated on other grounds by Gracidas-Ulibarry*, 231 F.3d 1188, we held that § 1326(a),[3] the illegal *re*entry

---

[3] In pertinent part, § 1326(a) punishes:

any alien who—

(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act.

statute, which in 1968 imposed a maximum imprisonment term of not more than two years, Immigration and Nationality Act, Pub. L. No. 414, § 276, 66 Stat. 163, 229 (1952) (current version at 8 U.S.C. § 1326), "is a regulatory statute enacted to assist in the control of unlawful immigration." *Id.* at 788.[4] Because § 1326(a) is a regulatory offense, "[t]he government need only prove that the accused is an alien and that he illegally entered [or attempted to illegally enter] the United States after being deported." *Pena-Cabanillas*, 394 F.2d at 789.[5] Given the similarity of §§ 1325 and 1326 for regulatory offense purposes (and given that section § 1326 imposes punishments greater or equal to § 1325), we would need a compelling reason to find that § 1325(a) is not a regulatory offense. *Cf. Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987) (noting that a *presumption* that similar language in statutes covering the same subject

---

8 U.S.C. § 1326(a). The statutory text of the provision does not materially differ from the version considered by the *Pena-Cabanillas* court.

[4] Other circuits similarly view § 1326(a) as a regulatory offense. *See, e.g.*, *United States v. Morales-Palacios*, 369 F.3d 442, 448 (5th Cir. 2004), *abrogated on other grounds by United States v. Resendiz-Ponce*, 549 U.S. 102 (2007); *United States v. Carlos-Colmenares*, 253 F.3d 276, 279 (7th Cir. 2001); *United States v. Martinez-Morel*, 118 F.3d 710, 717 (10th Cir. 1997); *United States v. Henry*, 111 F.3d 111, 114 (11th Cir. 1997); *United States v. Hussein*, 675 F.2d 114, 115–16 (6th Cir. 1982) (per curiam).

[5] In *Gracidas-Ulibarry*, we described § 1326(a) as a "general intent" offense. 231 F.3d at 1195 (interpreting our holding in *Pena-Cabanillas*). Rizo-Rizo argues from this that the statute requires a mens rea of "knowledge." But "general intent" can mean several things, *see United States v. Bailey*, 444 U.S. 394, 403 (1980), and in the context of § 1326(a), it means only that the reentry must be a voluntary act, *Pena-Cabanillas*, 394 F.2d at 788 n.2 ("We refer to [the voluntary act requirement] as 'general intent' to do or not do the act.").

has a "similar meaning"); *United States v. Novak*, 476 F.3d 1041, 1051 (9th Cir. 2007) (en banc) ("[C]ourts generally interpret similar language in different statutes in a like manner when the two statutes address a similar subject matter."). We could conceivably find such a reason if the legislative history of § 1325 were sufficiently different. But the precursor statutes to both § 1325(a) and § 1326(a), which bear substantially similar language to the modern statutes, were enacted together in 1929 as part of the same bill to regulate unlawful immigration. Act of Mar. 4, 1929, Pub. L. No. 70-1018, § 2, 45 Stat. 1551, 1551; *see* H.R. Rep. No. 70-2418, at 6–8 (1929). Likewise, both § 1325(a) and § 1326(a) were enacted together as part of the Immigration and Nationality Act of 1952. *See* Pub. L. No. 82-414, §§ 275, 276, 66 Stat. 163, 229; *cf. United States v. Nishiie*, 996 F.3d 1013, 1026 (9th Cir. 2021) (noting that when statutes are enacted shortly after one another and address the same subject and use similar language, that demonstrates Congress's intent that they have the same meaning).

Congress has adopted express mens rea requirements in other parts of § 1325. Section 1325(a)(3) punishes "[a]ny alien who . . . attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact." 8 U.S.C. § 1325(a)(3).[6] And § 1325(c) prohibits any individual from "knowingly enter[ing] into a marriage for the purpose of evading any provision of the immigration laws." *Id.* § 1325(c). Adjacent statutes also have express mens rea

---

[6] It makes sense that Congress would add an express mens rea requirement here. When a noncitizen crosses into the United States at a non-designated entry point, his entry alone is illegal, but when a noncitizen crosses *at* a designated port of entry, only his entry through willful falsity contravenes the law.

requirements. Section 1324(a)(1)(A) prohibits bringing a person into the country "knowing that a person is an alien," and § 1327 prohibits "knowingly aid[ing] or assist[ing] any [inadmissible] alien . . . to enter the United States." *See Pena-Cabanillas*, 394 F.2d at 789 & n.4 (identifying express mens rea provisions in the Immigration and Nationality Act). Congress also did not include express mens rea requirements in the precursor provision to § 1325(a), while including such requirements for other provisions in the same statute. *See* Act. of Mar. 4, 1929, 45 Stat. at 1551 (amending a law to prohibit knowingly bringing into the country a deported alien). And, of course, "where Congress has carefully employed a term in one place and excluded it in another, it should not be implied where excluded." *Pena-Cabanillas*, 394 F.2d at 789.

Our analysis confirms that 8 U.S.C. § 1325(a) is a regulatory offense, and no presumption in favor of scienter applies.[7] We thus conclude that Congress's silence as to knowledge of alienage means what such silence in a regulatory offense usually means. We therefore hold that knowledge of alienage is not an element of § 1325(a). Accordingly, Rizo-Rizo's conviction is affirmed.

**AFFIRMED.**

---

[7] Rizo-Rizo claims that a regulatory offense is not enough to defeat the presumption, and that we must also find "a 'strong indication' that Congress intended § 1325(a)(1) to be a strict-liability offense." But he misunderstands the regulatory offense exception: regulatory offenses are offenses "which we have understood Congress to impose a form of strict criminal liability through statutes that do not require the defendant to know the facts that make his conduct illegal." *Staples*, 511 U.S. at 606.