**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

MARIO GONZALEZ-GODINEZ,

*Defendant-Appellant*.

No. 21-50031

D.C. No.
3:19-cr-03506-
BGS-DMS-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, Chief District Judge, Presiding

Argued and Submitted November 15, 2023
Pasadena, California

Filed January 3, 2024

Before:  Barrington D. Parker, Jr.,* Jay S. Bybee, and
Kenneth K. Lee, Circuit Judges.

Opinion by Judge Lee

---

* The Honorable Barrington D. Parker, Jr., United States Circuit Judge for the U.S. Court of Appeals for the Second Circuit, sitting by designation.

**SUMMARY**[**]

**Criminal Law**

The panel affirmed Mario Gonzalez-Godinez's conviction for attempted illegal entry under 8 U.S.C. § 1325(a).

A Border Patrol agent witnessed Gonzalez crawling on the ground near a border fence, and Gonzalez admitted he was a Mexican citizen without documentation. After Gonzalez was arrested and taken to a border station, another Border Patrol agent read him his *Miranda* rights as well as his immigration-related administrative rights. Gonzalez waived both sets of rights, then confessed that he had been smuggled across the border that morning.

Gonzalez argued that the *Miranda* warning was inadequate because the agent also warned him that the post-arrest interview may be his only chance to seek asylum. The panel wrote that while these two warnings may have posed difficult decisions for Gonzalez, they are neither contradictory nor confusing. Observing that the record suggests that Gonzalez understood his rights, the panel wrote that Gonzalez's gambit was to talk in hopes of seeking asylum, despite the risks. The panel thus held that the government did not need to provide further clarification to the *Miranda* warning.

Gonzalez also argued that his conviction should be vacated under the *corpus delicti* doctrine because the

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

government did not corroborate his alienage admission. Noting that the *corpus delicti* doctrine sets a low bar, requiring only some evidence to support the confession, the panel held that sufficient evidence supported Gonzalez's confession.

## COUNSEL

Ryan W. Stitt (argued), Stitt Vu Trial Lawyers APC, San Diego, California, for Defendant-Appellant.

Jaclyn B. Stahl (argued), Assistant United States Attorney; Daniel E. Zipp, Assistant United States Attorney, Appellate Section Chief, Criminal Division; Randy S. Grossman, United States Attorney; United States Department of Justice, United States Attorney's Office, San Diego, California; for Plaintiff-Appellee.

## OPINION

LEE, Circuit Judge:

One early January morning, a United States Border Patrol agent witnessed Mario Gonzalez-Godinez crawling on the ground near a border fence—a mere thirty yards from Mexico. Gonzalez admitted he was a Mexican citizen without documentation. After Gonzalez was arrested and taken to a border station, another Border Patrol agent read him his *Miranda* rights as well as his immigration-related administrative rights. Gonzalez waived both sets of rights, then confessed that he had been smuggled across the border that morning.

Based on his statements to the Border Patrol agents, Gonzalez was later convicted of attempted illegal entry under 8 U.S.C. § 1325(a). He raises two arguments on appeal, both of which we reject.

First, he asks us to toss out his confession, arguing that the *Miranda* warning was inadequate because the agent also warned Gonzalez that the post-arrest interview may be his only chance to seek asylum. While these two warnings may have posed difficult decisions for Gonzalez, they are neither contradictory nor confusing. Criminal defendants often face a fork in the road with potential peril on either path. The record suggests that Gonzalez understood his rights, and Gonzalez's gambit was to talk in hopes of seeking asylum, despite the risks. We thus hold that the government did not need to provide further clarification to the *Miranda* warnings.

Second, Gonzalez invokes the *corpus delicti* doctrine and asserts that the government failed to corroborate his confession that he was a Mexican citizen who lacked documentation. But the *corpus delicti* doctrine sets a low bar, requiring only some evidence to support the confession. Sufficient evidence supported Gonzalez's confession.

We thus **affirm** Gonzalez's conviction.

## BACKGROUND

At around 8:30 a.m. in January 2019, U.S. Border Patrol Agent Chad Hewitt saw from afar Gonzalez and another man creeping on the ground around thirty yards from a border fence that had been partially "taken down due to construction." As Agent Hewitt approached them, he witnessed one man sliding down the embankment and the other hiding in the brush. Agent Hewitt asked the men about

"their citizenship, if they had illegally crossed the border and where they may have done that," and "if they had any identification or documents that would allow them to be in the United States legally." Each man confirmed he was a Mexican citizen without documentation.

The men were arrested and taken to a processing station, where another Border Patrol Agent, Marvin Jiron, questioned Gonzalez in Spanish. Agent Jiron gave Gonzalez a *Miranda* warning, advising him of his rights to silence and counsel. Agent Jiron also provided administrative immigration warnings, stating that their conversation might be Gonzalez's "only opportunity" to tell the agents that he was seeking asylum. Gonzalez voluntarily waived his *Miranda* and administrative rights. He then admitted that he had gone to a nearby port-of-entry, but after being turned away, he paid a smuggler to get him to Richmond, California, where he could work to support his family. He added that he sought "protection" in the United States.

The government charged Gonzalez with attempted illegal entry under 8 U.S.C. § 1325(a). At trial before Magistrate Judge Bernard G. Skomal of the United States District Court for the Southern District of California, Gonzalez moved to suppress his confession to Agent Jiron, arguing that it was inadmissible under Ninth Circuit precedent. Judge Skomal denied the motion. Gonzalez then moved for a judgment of acquittal, arguing that the government had not corroborated his confessions. Judge Skomal denied that motion as well and found Gonzalez guilty of illegal entry. He was sentenced to time served and deported.

The district court affirmed, and Gonzalez timely appealed.

## STANDARD OF REVIEW

We review the adequacy of *Miranda* warnings de novo. *United States v. San Juan-Cruz*, 314 F.3d 384, 387 (9th Cir. 2002). Corroboration is a "mixed question of law and fact that is primarily factual," so we review it for clear error. *United States v. Hernandez*, 105 F.3d 1330, 1332 (9th Cir. 1997).

## ANALYSIS

Gonzalez seeks to vacate his conviction for two reasons. First, he argues that his confession to Agent Jiron was inadmissible because he received an inadequate *Miranda* warning. Second, he contends that the government failed to corroborate his admission that he was a Mexican citizen. Neither argument succeeds.

### I. The government did not have a duty to clarify the right to remain silent, so Gonzalez's confession to Agent Jiron was admissible.

Gonzalez argues that we should cast aside his confession to Agent Jiron—and thus vacate his conviction—on the theory that the administrative immigration warning muddied the *Miranda* warning he received. He claims that he did not fully understand his right to remain silent in a criminal proceeding because Agent Jiron also notified him that this may be his only opportunity to assert an entitlement to asylum.

Gonzalez hitches his case on our circuit's decision in *San Juan-Cruz*, 314 F.3d at 389. In *San Juan-Cruz*, as here, border agents advised a defendant of his *Miranda* rights and his administrative immigration rights. *Id.* We held that the two warnings about the right to counsel directly conflicted: the administrative warning informed the defendant that he

had a right to counsel at his own expense, while the *Miranda* warning stated that he had a right to government-provided counsel free of charge. *Id.* at 388. Because those warnings were contradictory and "affirmatively misleading," *id.* at 387, the agents had a duty to clarify before taking the defendant's statement, *id.* at 389.

*San Juan-Cruz* does not extend to our case for three reasons.

First, unlike in *San Juan-Cruz*, the warnings to Gonzalez were not "affirmatively misleading" because there was no clear conflict between the two warnings. *Id.* at 387. In *San Juan-Cruz*, the defendant was at first told that the government would not provide him with a lawyer for the interview. *Id.* at 387–88. Soon after, he was advised that the government would provide him with a lawyer if he could not afford one. *Id.* at 388. We found that these two warnings conflicted because the first warning said the government would not provide him with a lawyer but the second appeared to say the exact opposite. *Id.*

But here, there was nothing misleading about the warnings Gonzalez received. Agent Jiron told him he had the right to remain silent and protect himself against potential criminal charges—which was true. And Agent Jiron also said that an interview may be his chance to seek asylum in a separate immigration proceeding—which was also true. While there may be some tension between those rights, it merely reflects the difficult trade-off that immigration defendants must sometimes make. An undocumented person may try to shield himself from criminal prosecution by remaining silent, but that may undermine his effort to seek asylum. Conversely, he may try to make his case for asylum, but that may expose him to

potential criminal liability. These are tough choices, but they do not pose an inherent contradiction.[1]

Second, *San Juan-Cruz* involved the right to counsel, not the right to remain silent. We have forged different contours in our case law for these two rights. We have taken a stricter approach for the right to counsel, holding that, for example, the police may not dissuade defendants from requesting counsel, including by making it unclear whether there is right to do so. *See San Juan-Cruz*, 314 F.3d at 389. In contrast, the Supreme Court has held that police can cajole defendants into waiving their right to remain silent—so long as police do so without using threats or intimidation—once they have notified the defendant of their rights. *See, e.g.*, *Fare v. Michael C.*, 442 U.S. 707, 727 (1979); *Berghuis v. Thompkins*, 560 U.S. 370, 386 (2010). Police can, for example, encourage a suspect to talk to proclaim his innocence, appeal to the suspect's conscience or religion, or even suggest that honesty will help him somehow. *Berghuis*, 560 U.S. at 386. Informing Gonzalez that he could seek asylum—despite his right to remain silent in a criminal case—is no different from those police tactics that coax a suspect into talking after being advised of his right to remain silent.

Nothing in the record suggests that Gonzalez misunderstood his *Miranda* rights. Agent Jiron informed

---

[1] Criminal defendants who face overlapping civil lawsuits face similarly difficult choices: They can assert their Fifth Amendment right against self-incrimination in civil suits, but that silence may be damning to their cases. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) (permitting courts and juries to draw adverse inferences about civil defendants who refuse to testify). On the other hand, they may choose to testify in civil lawsuits to defend themselves in those cases, but their statements could then be used against them in criminal proceedings.

Gonzalez of his *Miranda* rights in Spanish, and Gonzalez verbally said he understood and then signed a document reaffirming it. The facts here fall within our "presum[ption] that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Id.* at 385.

Third, *San Juan-Cruz* relied on the totality of the circumstances, finding that it was coercive enough to make "the nature of [the defendant's] rights" entirely unclear. *San Juan-Cruz*, 314 F.3d at 388. This was in part because the government handcuffed the defendant to a chair and interrogated him in a situation so "stressful" that it was "unfair" to make him "sort out [the] confusion" the warnings created. *Id.* Not so here. Nothing suggests that Gonzalez faced similarly coercive conditions: Agent Jiron did not even carry a gun, and Gonzalez signed a document saying he understood his rights. Gonzalez also never said he was confused and appeared to understand the choice he made.

In short, the two warnings Gonzalez received were not confusing. The agent accurately informed him about the rights that applied in two separate, parallel proceedings. The government was thus not required to clarify Gonzalez's right to silence.

## II. Gonzalez's alienage admission was sufficiently corroborated.

Gonzalez also argues that his conviction should be vacated under the *corpus delicti* doctrine because the government did not corroborate his alienage admission. The *corpus delicti* doctrine recognizes that people sometimes confess to crimes they did not commit, and thus precludes the government from proving its case using only a

confession. *United States v. Lopez-Alvarez*, 970 F.2d 583, 589 (9th Cir. 1992). But *corpus delicti* does not impose a high bar for the government to clear, and it does not require "evidence that would be independently sufficient to convict the defendant." *United States v. Valdez-Novoa*, 780 F.3d 906, 923 (9th Cir. 2015). Instead, because *corpus delicti* simply protects against convictions based on false confessions, the government need only offer evidence that "bolster[s] the confession itself." *Id.* at 924 (alteration in original) (quoting *Smith v. United States*, 348 U.S. 147, 156 (1954)). So, if there is "some" independent evidence to corroborate the confession, *corpus delicti* is satisfied. *Hernandez*, 105 F.3d at 1332.

The government here provided enough independent evidence to corroborate that Gonzalez was a Mexican citizen. As in *United States v. Garcia-Villegas*, Gonzalez "twice admitted" it—once to Agent Hewitt at the border, then again to Agent Jiron at the station. 575 F.3d 949, 951 (9th Cir. 2009). Further, circumstantial evidence of his behavior at the border supports his confession: Gonzalez was either sliding away from a partially deconstructed border fence or hiding in the nearby brush early in the morning. *See id.* And the conditions under which Agent Hewitt discovered him—in a remote, easy-to-cross area just a few miles from the port-of-entry that turned Gonzalez away—match the "very specific details" of his confession. *Valdez-Novoa*, 780 F.3d at 925. Altogether, this evidence supports Gonzalez's confession that he is a Mexican citizen who unlawfully entered the United States.

## CONCLUSION

We **AFFIRM** Gonzalez's conviction for attempted illegal entry under 8 U.S.C. § 1325(a).