NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

SEP 26 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff - Appellee, v. GABRIEL JIMENEZ-PERALTA, Defendant - Appellant. | No. 23-1290 D.C. No. 3:18-cr-05498-BLM-H-1 MEMORANDUM* |

Appeal from the United States District Court
for the Southern District of California
Marilyn L. Huff, Senior District Judge, Presiding

Argued and Submitted September 10, 2024
Pasadena, California

Before: IKUTA and FRIEDLAND, Circuit Judges, and HSU, District Judge.**

Gabriel Jimenez-Peralta appeals his conviction and sentence for attempted

illegal entry. 8 U.S.C. § 1325(a)(1). We affirm.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Wesley L. Hsu, United States District Judge for the Central District of California, sitting by designation.

## I.    EQUAL PROTECTION

As an initial matter, 8 U.S.C. § 1325 does not violate the equal protection component of the Fifth Amendment.  Jimenez-Peralta correctly concedes that *United States v. Carrillo-Lopez* dictates this result.  *See United States v. Carrillo-Lopez*, 68 F.4th 1133, 1153−54 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 703 (2024) (holding that the defendant did not meet his burden to prove that Congress enacted § 1326 because of discriminatory animus against Mexicans or other Central and South Americans).

## II.    IN-COURT IDENTIFICATION

The magistrate judge's admission of the agent's trial testimony identifying Jimenez-Peralta as one of the two individuals who ran from the border and hid in the bushes was not an abuse of discretion.  *See United States v. Dixon*, 201 F.3d 1223, 1229 (9th Cir. 2000) ("[A] district court's decision to admit in-court identification testimony" is reviewed "for an abuse of discretion").  "An abuse of discretion occurs only if the resulting in-court identification procedures are so 'unnecessarily suggestive and conducive to irreparable misidentification' as to amount to a denial of due process of law…." *United States v. Domina*, 784 F.2d 1361, 1369 (9th Cir. 1986) (quoting *United States v. Williams*, 436 F.2d 1166, 1168−69 (9th Cir. 1970)).  "As long as the witness has an independent recollection that is 'wholly untainted by [any] police misconduct,' an in-court identification is

permissible." *United States v. Lumitap*, 111 F.3d 81, 85 n.4 (9th Cir. 1997) (quoting *United States v. Crews*, 445 U.S. 463, 474 (1980)).

Jimenez-Peralta argues that, because the agent saw Jimenez-Peralta seated at defense table with counsel, the identification was based on Jimenez-Peralta's presence in court rather than the agent's independent recollection of Jimenez-Peralta. It was not an abuse of discretion, however, for the magistrate judge to credit the agent's account that the identification testimony was based on the agent's independent recollection of Jimenez-Peralta from reviewing Jimenez-Peralta's arrest report and photograph in advance of trial. *Id.* (holding that in-court identifications are permissible as long as the witness has an "independent recollection" that is "untainted by. . . police misconduct" (quotation marks omitted)).[1] The magistrate judge also permitted Jimenez-Peralta's counsel to cross-examine the agent about his limited recollection of Jimenez-Peralta from the day of the apprehension. The record accordingly indicates that the district court took sufficient steps to avoid an identification so "'unnecessarily suggestive and

---

[1] The agent's testimony that he had an independent recollection of Jimenez-Peralta based on his review of the photograph also undermines Jimenez-Peralta's argument that the government failed to prove the identity of the defendant beyond a reasonable doubt.

conducive to irreparable misidentification' as to amount to a denial of due process of law…." *Domina*, 784 F.2d at 1369 (quoting *Williams*, 436 F.2d at 1168−69).

## III. SUFFICIENCY OF EVIDENCE

We also find that the evidence was sufficient to sustain Jimenez-Peralta's conviction. "In considering a challenge to the sufficiency of the evidence, we consider whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Alvarez*, 358 F.3d 1194, 1201 (9th Cir. 2004) (emphasis in original) (quoting *United States v. Bautista-Avila*, 6 F.3d 1360, 1362 (9th Cir. 1993)). To convict a defendant of a violation of 8 U.S.C § 1325(a)(1), "the government must prove beyond a reasonable doubt that the individual was an 'alien who…enter[ed] or attempt[ed] to enter the United States at any time or place other than as designated by immigration officers.'" *United States v. Aldana*, 878 F.3d 877, 880 (9th Cir. 2017) (quoting 8 U.S.C. § 1325(a)(1)).

### A. <u>Alienage</u>

A rational trier of fact could find that the government proved beyond a reasonable doubt Jimenez-Peralta's alienage. If the government relies on defendant's admission to establish guilt, the corpus delicti doctrine requires that the admission of an element of a crime "be corroborated by 'substantial

independent evidence which would tend to establish the trustworthiness of the statement[s].'" *United States v. Garcia-Villegas*, 575 F.3d 949, 950 (9th Cir. 2009) (quoting *Opper v. United States*, 348 U.S. 84, 93 (1954)); *see also United States v. Lopez-Alvarez*, 970 F.2d 583, 592 (9th Cir. 1992) (explaining that the corroboration requirement is "two-pronged" and requires (i) "sufficient evidence to establish that the criminal conduct at the core of the offense has occurred[,]" and (ii) "independent evidence tending to establish the trustworthiness of the admissions…"). "[M]ode of entry evidence [that] comes not only from the defendant but also from two independent sources" provides sufficient corroboration. *Garcia-Villegas*, 575 F.3d at 951.

Here, Jimenez-Peralta admitted that he was a citizen of Mexico and did not have immigration documents. This admission is corroborated by mode of entry evidence that comes from even more than the requisite "two independent sources." *Id.* In addition to the two agents who testified about Jimenez-Peralta's mode of entry, there was also video evidence corroborating Jimenez-Peralta's entry in a manner consistent with a lack of permission to enter the United States—running from the border in an area 25 miles from the nearest designated port of entry and hiding from law enforcement in the bushes. In addition, the facts that Jimenez-Peralta attempted to avoid detection, did not respond to the agents' self-

identification as Border Patrol agents, and was taken into custody near the border also demonstrate a lack of permission to enter the United States.

B.  **Attempted Entry and Intent**

Viewing the evidence in the light most favorable to the prosecution, there is also sufficient evidence for a rational trier of fact to find that Jimenez-Peralta attempted entry at a time and place other than a designated port of entry and had specific intent to do so. The statute requires that the defendant had specifically intended "to enter the United States at a time or place other than as designated by immigration officers," which includes the specific intent to "enter without being taken into custody by government authorities[.]" *United States v. Rizo-Rizo*, 16 F.4th 1292, 1295 & n.1 (9th Cir. 2021). The defendant must also take a substantial step toward committing that crime. *Id.* at 1294 (citing plea colloquy); *see also United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1190 (9th Cir. 2000) (en banc) (holding that 8 U.S.C. § 1326 incorporates the common law meaning of attempt, which requires, *inter alia*, "some overt act that was a substantial step toward committing [the] crime").

Because no agent testified that he saw Jimenez-Peralta climb the border fence, Jimenez-Peralta argues that there is not sufficient evidence that he took a substantial step toward committing the crime of unlawful entry. Any rational trier of fact could conclude that Jimenez-Peralta unlawfully crossed the border fence

and had the specific intent to do so, however, from the fact that he was seen and videotaped running northbound, yards from the border fence in an area miles from a designated port of entry, and hiding from law enforcement in the bushes. *See United States v. Quintana-Torres*, 235 F.3d 1197, 1200 (9th Cir. 2000) ("[A] face covered by jam near a jam jar is convincing proof of jam-eating unless otherwise explained."). We accordingly conclude that Jimenez-Peralta's conviction is supported by sufficient evidence.

## IV.    ALLEGED *BRADY* MATERIAL

Even assuming an error occurred with respect to the magistrate judge's orders regarding the government's *ex parte* applications—an issue we do not reach—a remand is not required. *See Strickler v. Greene*, 527 U.S. 263, 296 (1999) (holding that the failure to produce non-material impeachment evidence did not require remand).

### A.    <u>Personnel File Information</u>

The magistrate judge did not abuse her discretion by ruling that the government need not disclose the information contained in the personnel file of one of the agents under *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991). The information contained in the personnel file is non-material.

## B.    Facebook Information

Furthermore, we need not and do not reach Jimenez-Peralta's argument that the magistrate judge erred by not ordering the disclosure of the testifying agents' memberships in certain Facebook groups nor requiring the prosecution to search its files and United States Customs and Border Protection's files for any documents evidencing Facebook activity by the testifying agents in the relevant Facebook groups. *See United States v. Cano*, 934 F.3d 1002, 1023 (9th Cir. 2019) (explaining how the prosecutor is presumed to have knowledge and access to documents held by an executive branch agency "if the agency participates in the investigation of the defendant[]"). Even if this were an error, any undisclosed evidence that could impeach the agents' testimony would not create a "reasonable probability that its disclosure would have produced a different result[.]" *Kyles v. Whitley*, 514 U.S. 419, 422 (1995).

As to the first agent's testimony, even if impeachable, it was entirely corroborated by video evidence depicting "[t]wo individuals running northbound away from the U.S.-Mexico international border fence." As to the second agent, even assuming his credibility was substantially discounted by evidence of bias, the agent's testimony that Jimenez-Peralta admitted his alienage was corroborated by substantial circumstantial evidence that Jimenez-Peralta entered the United States without permission. As to the agent's testimony linking Jimenez-Peralta to the

individuals crossing the border, that too was corroborated by video evidence indicating that Jimenez-Peralta was apprehended at the location identified by the first agent. *See Strickler*, 527 U.S. at 291 (explaining that there must be a reasonable probability of a different result even after "a total, or just a substantial, discount" of the impeached witness's testimony). In short, even assuming that the second agent's testimony was impeachable by any undisclosed information, his testimony could not be completely discounted, and in any event was amply supported by the government's other evidence.

## V.    CONCLUSION

Jimenez-Peralta's conviction and sentence are **AFFIRMED**.