NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FEB 6 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 24-6033 |
| Plaintiff - Appellee, | D.C. No. 3:19-mj-24177-MSB-WQH-1 |
| v. | |
| ANDREA DENISE CONTRERAS-VERGARA, | MEMORANDUM* |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Southern District of California
William Q. Hayes, District Judge, Presiding

Submitted February 4, 2026**
Pasadena, California

Before: LEE, KOH, and DE ALBA, Circuit Judges.

Andrea Denise Contreras-Vergara appeals her conviction for misdemeanor attempted illegal entry under 8 U.S.C. § 1325(a)(1). To convict a defendant of a violation of § 1325(a)(1), the government must prove beyond a reasonable doubt

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

that the individual was an "alien who entered or attempted to enter the United States at any time or place other than as designated by immigration officers." *United States v. Aldana*, 878 F.3d 877, 880 (9th Cir. 2017) (quoting 8 U.S.C. § 1325(a)(1)) (cleaned up) (alterations adopted). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

A Border Patrol agent using an infrared device spotted Contreras-Vergara and three other individuals walking northbound near the border on a commonly used smuggling route. When another agent shone a flashlight on them, all of them ran and scattered. Contreras-Vergara was found lying "face down" in a large "manzanilla bush**.**" The agent asked Contreras-Vergara in Spanish what country she was a citizen of, and she responded "Mexico." He then asked her if she had "documents to stay here legally," and she responded "No." Another agent searched for Contreras-Vergara in the TECS database (which contains records of entries and departures into and out of the United States at designated ports of entry), and determined there was no record of her having legally entered the United States.

1.    <u>Corroboration of Confession</u>. Corroboration of a confession "is a mixed question of law and fact that is primarily factual, so we review it for clear error." *United States v. Gonzalez-Godinez*, 89 F.4th 1205, 1208 (9th Cir.), *cert. denied*, 145 S. Ct. 251, 220 L. Ed. 2d 72 (2024) (internal quotation marks and citation omitted). This court reviews de novo whether the evidence suffices "to

support a conviction if, review[ed] . . . in the light most favorable to the Government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hernandez*, 105 F.3d 1330, 1332 (9th Cir. 1997).

Contreras-Vergara argues that the government provided insufficient evidence under the *corpus delicti* doctrine to corroborate her admission of alienage. The *corpus delicti* doctrine "precludes the government from proving its case using only a confession." *Gonzalez-Godinez*, 89 F.4th at 1210 (citing *United States v. Lopez-Alvarez*, 970 F.2d 583, 589 (9th Cir. 1992)). She contends that purely circumstantial evidence fails to suffice under *corpus delicti*. But *corpus delicti* only requires "'some' independent evidence to corroborate the confession." *Id.*; *see id.* (finding circumstantial evidence sufficient to corroborate a confession); *United States v. Niebla-Torres*, 847 F.3d 1049, 1055 (9th Cir. 2017) ("[T]he *corpus delic*[]*ti* rule does not require the government to introduce evidence that would be independently sufficient to convict the defendant in the absence of the confession.") (citation omitted).

That standard is satisfied here. In addition to Contreras-Vergara's confession, the government provided evidence that an agent spotted her at night in a remote location where illegal crossings are common; she scattered and ran when confronted by an agent; she was found lying face down in a bush; and an agent

searched a federal database and found no record of Contreras-Vergara crossing into the United States at a designated port of entry. Accordingly, the government presented "some" independent evidence to corroborate her confession. *Gonzalez-Godinez*, 89 F.4th at 1210.

2. <u>Evidence of Alienage</u>. Contreras-Vergara argues that the evidence is insufficient for a rational trier of fact to find that she was a citizen of Mexico with no permission to enter the United States. She explains that, even accepting she is a citizen of Mexico, the government did not disprove the possibility that she had legal permission to enter the United States. Her argument is unavailing. For one thing, "the government does not have the burden of *disproving* each element of derivative citizenship; only 'alienage' is among the elements of the crime, so only it must be proven." *United States v. Sandoval-Gonzalez*, 642 F.3d 717, 724 (9th Cir. 2011) (emphasis in original); *see United States v. Dawson*, 469 F.2d 64, 64 (9th Cir. 1972) (per curiam) (explaining that evidence of alienage was sufficient even though "it is possible the [defendants] [] were dual citizens of Mexico and the United States," because "it was not necessary for the government to negative all possible situations that could have impaired the status.").

Further, the government presented sufficient evidence that Contreras-Vergara was an alien with no legal permission to be in the United States. In addition to the evidence described above, the government also presented testimony

from the arresting agent that Contreras-Vergara admitted that she is a Mexican citizen and did not have "documents to stay here legally." Those admissions, along with the circumstances surrounding her mode of entry, amount to sufficient evidence. *See United States v. Arriaga-Segura*, 743 F.2d 1434, 1435 (9th Cir. 1984) (finding sufficient evidence to establish alienage where defendant admitted Mexican citizenship upon being stopped by border patrol agents in a "remote area . . . known for alien smuggling" that was 60 miles from the nearest designated entry point).

**AFFIRMED.**